CASES DECIDED IN ALL THE

# JUDICIAL DISTRICTS

OF

# PENNSYLVANIA

## VOL. II.

---

### Lippincott's Estate.

*Wills—Construction—Gift of life estate implied from gift over.*

Testator devised the residue of his estate, "either real, personal or mixed," in trust to convert his real estate and invest the proceeds, "the interest of which" was to be "divided" every six months between his widow and nephew "share and share alike," providing that "should either die before the other without descendants living at his or her decease, this share shall go to the one surviving," with a gift over on the death of the widow to the nephew if living, with remainder to his descendants and ultimate gifts over to charities. The nephew died in the widow's lifetime, leaving a daughter: *Held*, (1) that the trust included the entire estate of the testator, both real and personal; (2) that during the joint lives of the widow and nephew they were given the residue in equal shares; (3) that there was no gift of *corpus* until the death of the widow; (4) that the interest to be divided was the income of the entire fund, and not merely the interest from the securities in which the proceeds of the directed sale of the real estate were to be invested; (5) that a gift was implied to the daughter of the nephew of his share of the income of the fund during the life of the widow in case he predeceased her.

Exceptions to adjudication. O. C. Phila. Co., April T., 1905, No. 272.

The auditing judge (Gest, J.), in his adjudication, said:

"J. Dundas Lippincott died on March 6, 1905, leaving a widow, Isabel, who subsequently remarried and is now Isabel A. Barklie, and a will admitted to probate on March 13, 1905, when letters testamentary were granted to Pennsylvania Company for Insurances on Lives and Granting Annuities. By the adjudication upon the account of the executors the residuary estate was awarded to the accountant in trust under the residuary clause of the will, which is the only part thereof with which the present audit is concerned, and which reads as follows:

" 'As to the remainder of my estate, either Real, Personal or mixed, I give and bequeath the same to The Pennsylvania Company for Insurances on Lives and Granting Annuities, where I am a director, to be held by them in Trust, the Real estate to be sold with power to sell real estate and make good deeds, the proceeds of sale of the same to be invested in good, safe securities, not necessarily 'legal investments,' the interest of which to be divided every six months between my wife Isabel Armstrong Lippincott and my nephew Ralph

Wurts-Dundas, share and share alike.   Should either die before the other without descendants alive at his or her decease, this share shall go to the one surviving.

"'On the death of my wife Isabel Armstrong Lippincott, I give and bequeath the residue and remainder of my Estate to my nephew Ralph Wurts-Dundas for life with remainder to his descendants, taking *per stirpes* upon the principal of representation.   Should he leave no descendants surviving him this sum shall be evenly divided between the following Hospitals in the City of Philadelphia:  The University Hospital, West Philadelphia— The Jefferson Hospital of this City and the Episcopal Hospital of this City.'

"Counsel agreed upon the following facts:

"'At the time the testator, J. Dundas Lippincott, made his will, which is dated Aug. 4, 1904, he was sixty-four years of age.   He died March 6, 1905. He was twice married and had no issue by either wife.   His second wife, Isabel Armstrong Lippincott (now Barklie), was at the date of said will thirty-seven years of age.   The testator had no brothers and only one sister, Anna M. D. Lippincott, who married William Wurts, who assumed the name of Wurts-Dundas.   She had but one child, Ralph Wurts-Dundas, the nephew mentioned in the will of the testator, who died Oct. 18, 1921, having had but one child, Muriel, who was living at the date of testator's will and is now a minor, represented here by her guardian, Central Union Trust Company of New York.   Mrs. Barklie, the testator's widow, is still living.'

"This account is filed by reason of the death of Ralph Wurts-Dundas on Oct. 18, 1921, at the age of fifty-two years, intestate, leaving one child, Muriel Garman Wurts-Dundas, above mentioned.   Letters of administration were granted on his estate by the Surrogate of New York on Nov. 3, 1921, to Josephine H. Wurts-Dundas and George Francklyn Lawrence.   The rights of the parties under the residuary clause of the will must now be determined.

"It was claimed first by Mr. Brinton, representing the administrators of Ralph Wurts-Dundas, that, on the death of Ralph Wurts-Dundas, his administrators were entitled to his one-half share of the income as a vested interest *pur autre vie* until the death of Mrs. Barklie; it was secondly claimed by Mr. Trinkle, on behalf of Mrs. Barklie, that she now is entitled to the entire income of the residuary personal estate for her life, and also to one-half of the income from the invested proceeds of the directed sale of real estate, and also, under the intestate laws, to one-half of the one-half of the income from the invested proceeds of the sale of real estate, which, under the will, was payable to the nephew during his life, on the ground that the testator had made no disposition of that share of the trust income in the contingency which has happened.   And, finally, it was claimed by Mr. McCouch, in behalf of the guardian of Muriel, the only child of Ralph Wurts-Dundas, that she is entitled to one-half of the income formerly payable to her father, Ralph Wurts-Dundas, during his life, until the termination of the trust by the death of Mrs. Barklie.

"The phraseology of this clause of the will is certainly clumsy and awkward, but I have little doubt as to its proper construction in the circumstances of the case.   I consider this much clear beyond peradventure, first, that the trust includes the entire estate of the testator, both real and personal, as this is in express terms given to the trustee to be held in trust;  secondly, that during the joint lives of the testator's wife and nephew, these two persons are given the income in equal shares;  and, thirdly, that the trust continues until the death of the widow, when, and only when, there is any gift

2 D. & C.

of the *corpus* of the estate. The testator, indeed, after the devise to his trustee of the estate to be so held in trust, inserts the power of sale over the real estate and the direction as to investment of the proceeds, and then continues with the words, 'the interest of which is to be divided between my wife Isabel and my nephew Ralph;' but it is impossible for me to suppose for a moment, as was argued in behalf of Mrs. Barklie, that the 'interest' which is to be so derived refers to the interest or income from the securities in which the proceeds of the directed sale of the real estate are to be invested. This would, indeed, impale the testamentary intent on a sharp point of grammatical construction. The clauses mentioned are obviously parenthetical, and to follow out the contrary argument to its fullest extent and find that the testator died intestate as to the income of a part of the estate would do violence to a fundamental principle of testamentary construction. The strong presumption is that a testator did not intend to die intestate as to any portion of his estate, and a construction which would produce even a partial intestacy will not be adopted if the will can be fairly and reasonably interpreted to apply to the entire estate. Intestacy, so to speak, is a *tabula ex naufragio*, a means of escape where the testamentary intention has been wrecked and nothing else is available, as in Stock's Estate, 29 Dist. R. 376. No such necessity appears here; on the contrary, as Judge Penrose said in Duffy's Estate, 4 Dist. R. 147, to accomplish the manifest purpose of the testator, words may even be freely transposed, omitted or supplied, and here no heroic operation is needed, for if those words which are plainly parenthetical are treated as such, all difficulty disappears.

"After thus directing the payment of the income to Isabel and Ralph, share and share alike, the testator continued, 'should either die before the other without descendants alive at his or her decease, this share shall go to the one surviving.' Of course, one of the two must, in the ordinary course of nature, die before the other, and the testator provides in express terms for the event that the first to die shall leave no descendants alive at his or her death, the use of the words 'his or her' showing that he had both his wife and his nephew in his mind. If Ralph had died childless, it is clear that Isabel would now take the entire income. But he did not die childless; he left a daughter, Muriel, and the testator does not in express terms give that child her father's income. I cannot, however, doubt that this gift is necessarily implied. In Beilstein v. Beilstein, 194 Pa. 152, the Supreme Court held that a devise over, in case Gertie (the testator's daughter) should die 'without leaving a family,' is an implied devise to her family if she should leave one. The court said: 'It is only if she does not that the devise over is to take effect, and there is a necessary implication that in the other unexpressed contingency of her leaving a family the estate is to go to them.' The same principle of construction was previously employed in Bentley v. Kauffman, 12 Phila. 435; s. c., 86 Pa. 99; and Beilstein v. Beilstein has been expressly followed by this court in Crossman's Estate, 24 Dist. R. 600, and Stelwagon's Estate, 25 Dist. R. 161.

"It may be that in England, according to the decisions cited by Mr. Trinkle in his learned and elaborate brief, a different rule applies, but, as it was pointed out in Crossman's Estate, 24 Dist. R. 600, such decisions are not authoritative in this jurisdiction.

"The argument advanced in behalf of the administrators of Ralph Wurts-Dundas against this conclusion is far from convincing. Briefly stated, it is that, in the first paragraph of the trust, there is no limitation of the gift of the income to the nephew for the term of his life, and the will does not expressly

say what shall result in the event of the death of the nephew, leaving a child, before the death of the widow; while in the second paragraph the trust is terminated by the death of the widow, when the entire estate is given to the nephew for life, with remainder to his descendants. Little's Appeal, 81 Pa. 190, was principally relied on; but that case is very different from this, for, as the Supreme Court said, the testator had there used no words to show an intent to limit the gift of the income to Mrs. Little for her own life. In the will of this testator, however, such an intention does appear in the first paragraph, as I have already indicated, and in the second paragraph, when Ralph is given the entire income on the death of Isabel, his interest is expressly given for life only. Maxwell's Estate, 67 Pa. Superior Ct. 63, 261 Pa. 140, is one of the latest cases on the subject where this court and the Superior Court thought there was a vested estate *pur autre vie;* but the Supreme Court reversed, being of opinion that the case fell within the principle of Rowland's Estate, 141 Pa. 553. These cases, with others, I have considered with some care, but I fail to find any that sustain the argument presented for the administrators of Ralph Wurts-Dundas.

"It may be proper, in conclusion, to mention a point that was mentioned at the argument, and which might, if the facts were different, call for discussion. If we suppose that the widow, Isabel, had died before Ralph, leaving issue, such issue would, under the construction adopted in this adjudication, be entitled to her one-half share of the income, and yet, in the very next clause, the testator provides that on the happening of that event, viz., the death of Isabel, Ralph would be entitled to the entire estate for life, with remainder to his descendants, and in default of descendants, then over, &c. It is not necessary to decide questions that do not arise, and whatever might be the result in such circumstances, or in perhaps other complications that have not occurred, I cannot see that the decision of the question as it is here presented should be otherwise than as I have indicated in this adjudication, which I have perhaps unduly prolonged in consideration of the large amount of money involved.

"The balance of principal per account and supplemental account, composed as stated, is $3,602,157.24, which is awarded to the accountant in trust under the will and in accordance with this adjudication.

"The balance of income is $53,990.90, of which there is awarded to Isabel A. Barklie one-half, and from the remaining one-half there is awarded to Josephine H. Wurts-Dundas and George Francklyn Lawrence, administrators of the estate of Ralph Wurts-Dundas, the income due him and accrued to the date of his death, on compliance with 58 *(f)* of the Fiduciaries Act of 1917, and the remainder of said one-half share of the income is awarded to Central Union Trust Company of New York, guardian of the estate of Muriel Harman Wurts-Dundas, on compliance with 58 *(g)* of the Fiduciaries Act of 1917."

Exceptions were filed by the administrators of the estate of Ralph Wurts-Dundas, deceased, and by the widow.

*Sharswood Brinton* and *William N. Trinkle,* for exceptions.

*H. Gordon McCouch,* contra.

PER CURIAM, April 21, 1922.—The clause of the will in controversy has been interpreted by the auditing judge in accordance with the authorities, and in the one and only way consistent with its obvious meaning. Neither of the theories advanced by exceptants is convincing. In the circumstances, it is unnecessary to say more. The exceptions are, therefore, dismissed and the adjudication is confirmed absolutely.